IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

MARY PAULA HARVILLE                                              PLAINTIFF

V.                                                     CIVIL ACTION NO.: 1:16-cv-64-SA-DAS

CITY OF HOUSTON, MISSISSIPPI                              DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on Defendant's Motion for Summary Judgment [41]. Plaintiff responded and Defendant replied.

*Facts and Procedural History*

Mary Paula Harville, a sixty-year-old white female, was hired by the City of Houston in July 2005 as a deputy clerk. She was one of four deputy clerks employed by the City Clerk's Office. Harville worked alongside Barbara Buggs, Kathy Smith, Margaret Futral, and Shequala Jones. Even though the deputy clerks were mostly cross-trained, each had primary duties. Harville's primary duties were to collect ad valorem, privilege and school taxes, and handle accounts payable.

In 2015, the City of Houston faced a funding shortfall. Futral, who was serving as the City Clerk at the time, told Harville that the City Board had decided to reduce the number of deputy clerks in the office from four to three. Futral wrote a letter to the Board, suggesting that the City merely cut clerk employees' hours in order to keep the office under budget. She advised the Board to terminate Shaquala Jones if the Board found it necessary to cut a position. Jones had recently been on maternity leave, and during that time, Futrual realized that Jones was not vital to the operations in the office. Furthermore, Futral felt that Jones was the least trained of the office staff, and that Harville was the most essential. Futral felt so strongly that she threatened to resign if the

Board desired to terminate Harville. Futral suggested that the City promote Harville to replace her if the situation developed as such.

However, the City terminated Harville along with four other city employees on September 15, 2015. The decision was unanimous. The Board minutes reflect that Alderman Uhiren considered Harville's work in tax collection to be "seasonal," which was the reason the Board determined Harville to be the best candidate for termination.

On March 8, 2016, Futral resigned from her position. The City placed newspaper advertisements for the City Clerk position that ran in The Chickasaw Journal in March, May, August, and September of 2016. Harville applied for the position of City Clerk each time it was advertised, but the Board instructed the Mayor to interview for the position only after the fourth advertisement, coincidentally after Lisa Sanford applied for the first time. On November 10, 2016, the Board interviewed Harville and Lisa Sanford for the position. At the interview, one of the Aldermen asked Harville "how long did she think she would work." Ultimately, the City hired Lisa Sanford to replace Futral as the new City Clerk.

Harville brings claims of racial discrimination and retaliation under Title VII and Section 1981, and age discrimination under the ADEA. She alleges that the Board treated Shequala Jones more favorably, because she was younger and African American. Harville argues that the Board did not initially interview her in retaliation for her EEOC charge, filed on November 3, 2015, and that it acted discriminatory in neglecting to interview for the position until it had a desired candidate.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The Rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Plaintiff alleges that the City of Houston participated in both race and age discrimination when it decided to terminate her instead of Shaquala Jones, a younger African American woman. Furthermore, she claims that the City retaliated against her after she filed her EEOC charge,

because it refused to interview her for the City Clerk position until it had another, more preferable applicant.

Plaintiff attempts to establish her Title VII, Section 1981, and ADEA discrimination claims with circumstantial evidence, and therefore seeks to navigate the familiar burden-shifting framework first set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Miller v. Raytheon Co.*, 716 F.3d 138, 144 (5th Cir. 2013) (ADEA); *Nasti v. CIBA Specialty Chems. Corp.*, 492 F.3d 589, 593 (5th Cir. 2007) (race discrimination); *Raggs v. Mississippi Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002) ("This Court considers claims of intentional discrimination, which include racial discrimination and retaliation claims based on Title VII and 42 U.S.C. § 1981, under the same rubric of analysis"). Under this framework, Plaintiff must first establish a prima facie case of discrimination, after which the burden shifts to Defendant to produce a legitimate non-discriminatory reason for terminating her. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219-20 (5th Cir. 2001). If the Defendant comes forth with a sufficient reason, the burden shifts back to the Plaintiff to show that Defendant's given reason was really a pretext for discrimination. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (citing *Reeves*, 530 U.S. at 143, 120 S. Ct. 2097).

Regarding Plaintiff's race discrimination claims, Plaintiff must ultimately prove that her race was a "motivating factor" in the Defendant's decision to terminate her. 42 U.S.C. § 2000e-2(m); *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2526, 186 L. Ed. 2d 503 (2013). However, to prove discriminatory termination under the ADEA and retaliation, the plaintiff must show that "but-for" the alleged discrimination, she would not have been terminated. *Gross v. FBL Financial Servs., Inc.*, 557 U.S. 167, 176, 129 S. Ct. 2343, 174 L. Ed. 2d 119 (2009) (ADEA); *Pineda v. United Parcel Service, Inc.*, 360 F.3d 483, 487 (5th Cir. 2004) (retaliation)

*A. Racial Discrimination*

To meet her prima facie burden for race discrimination, the Plaintiff must demonstrate that "(1) she belongs to a protected group, (2) she was qualified for her position, (3) she suffered an adverse employment action[,] and (4) she was replaced with a similarly qualified person who was not a member of her protected group, or in the case of disparate treatment, that similarly situated employees were treated more favorably." *Nasti*, 492 F.3d at 593 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001)).

Plaintiff had performed as a deputy clerk for several years before her termination, and there is no dispute as to her qualifications for the job. Furthermore, Plaintiff's race is a protected characteristic, and she experienced an adverse employment action when she was terminated. Primarily focusing her allegations upon Shequala Jones, Plaintiff argues both that an employee outside of the protected group replaced her, and that similarly situated employees were treated more favorably.

Plaintiff argues that she was far more qualified than Jones, and that she was "far more important to the city clerk's office." Plaintiff alleges that while Jones was not trained to assist in the other departments, Plaintiff could perform every job in the office. She argues that Jones spent most of her time on her cell phone, and wasted time on social media sites. However, because the Board terminated Plaintiff instead of Jones, Plaintiff posits that keeping Jones was improper favoritism, due to her relation to Alderwoman Jones.

Defendant refutes Plaintiff's prima facie case by citing the fact that the Board terminated several other employees. Defendant argues that it based Plaintiff's termination on funding deficits and the fact that it considered Plaintiff as a "seasonal" employee. Furthermore, the City argues that

it did not replace Plaintiff. Instead, the remaining Deputy Clerks maintained the tax work until the City obtained temporary assistance from the tax assessor's office.

For prima facie purposes, the Plaintiff has created a question of fact regarding the elements of the prima facie case, and thus a presumption of discrimination arises. *See Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 639 (5th Cir. 1985) ("to establish a prima facie case, a plaintiff need only make a very minimal showing). In response, Defendant has articulated a legitimate, non-discriminatory reason for terminating Plaintiff, *i.e.*, the budget shortage and resulting necessary employee cut-backs. When the "defendant has offered a legitimate nondiscriminatory reason for its action, the presumption of discrimination derived from the plaintiff's prima facie case "simply drops out of the picture." *Mayberry v. Vought Aircraft Co*., 55 F.3d 1086, 1090 (5th Cir. 1995) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). The ultimate question [is] discrimination *vel non*." *Hicks*, at 518, 113 S. Ct. 2742.

Thus, the Plaintiff is given the opportunity to demonstrate that the Defendant's articulated rationale is merely pretext for discrimination, or is unworthy of credence. Plaintiff posits several arguments regarding pretext. First, Plaintiff argues that she was an excellent employee and that the other deputy clerks were inferior. She alleges that she never received a disciplinary action. Next, she argues that she was the only person in the office trained to do her job, while Jones was the least trained. Plaintiff cites Futral's letter to the Board, urging the Aldermen to retain Plaintiff and warning them that Plaintiff would have a meritorious lawsuit if terminated. Futral also testified that if Plaintiff had been black, she would not have been laid off.

In response, Defendant points to deposition testimony, wherein Futral admitted that she believed that the real reason Plaintiff was terminated instead of Barbara Buggs or Shequala Jones

6

was that they were related to Alderwoman Shenia Jones. Defendant also points to deposition testimony. There, the Plaintiff testified that because Buggs, Jones and Alderwoman Jones were related, they were not terminated; rather Plaintiff was terminated because she is not black. Plaintiff and Futral conflate discrimination with nepotism. Additionally, when asked, "what facts or evidence do you have that Shenia Jones' vote was based on race," Plaintiff responded, "Well, I don't know. I just feel that way." Clearly, the deposition testimony is imprecise. Plaintiff offers little else in the record to prove her claim.

Still, Plaintiff argues that race was a motivating factor in her termination. She again points to Futral's testimony, wherein she describes that her reason for resigning was in part due to racial tension within the office. Futral testified that she was accused of racial profiling and was told that the NAACP planned to attend a Board meeting. The NAACP never showed up for the Board meeting, and therefore, Futral alleges that the Board intended to threaten her. Furthermore, Plaintiff argues that, given Futral's experience working with the deputy clerks, the fact that the Board chose to eliminate Plaintiff from her position against Futral's advisement is questionable.

However, Defendant correctly argues that Plaintiff's subjective belief or conclusory allegation is insufficient to support a race discrimination claim. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) ("In short, conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden.") (en banc); *Nichols v. Lewis Grocer*, 138 F.3d 563, 571 (5th Cir. 1998). Defendant also counters that Futral was simply wrong in her recommendation to retain Plaintiff, as Barbara Buggs was a full time employee who was experienced in and capable of doing the taxes. She had done them before Plaintiff was hired. Finally, Defendant argues that Shenia Jones was the Board member who initially made the motion to hire Plaintiff, which Alderwoman Willie Mae McKinney seconded,

who is also African American. Indeed, the "same actor" inference has been adopted in the Fifth Circuit, and is pertinent here. *See Brown v. CSC Logic, Inc.*, 82 F.3d 651, 658 (5th Cir. 1996) (overruled on other grounds). If Shenia Jones harbored racial animus towards Plaintiff's class, it hardly makes sense that she would have moved the Board to hire her, and then not attempt to terminate her or otherwise display hostility towards her for over ten years. *See Hervey v. Mississippi Dep't of Educ.*, 404 F. App'x 865, 871 (5th Cir. 2010).

Regarding whether Plaintiff was a seasonal employee, the "existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification." *Little v. Republic Refining Co*., 924 F.2d 93, 97 (5th Cir.1991) (internal citation omitted). Furthermore, whether Futral experienced racial tension is both unsubstantiated and inconclusive as to Plaintiff's claims.

Plaintiff has brought forth no further relevant evidence that Defendant's legitimate, nondiscriminatory reason for terminating her—that it faced a budget shortfall and needed to cut the seasonal position—is merely pretext or is otherwise unworthy of credence. The Court finds that the Plaintiff has failed to present evidence that Defendant discriminated against her based on her race. Thus, her racial discrimination claim fails even if considered in the mixed motives context, and it must be dismissed.

*B. Age Discrimination*

To establish a prima facie case of discriminatory termination under the ADEA, the Plaintiff must demonstrate that she: (1) was discharged, (2) was qualified for the position held, (3) was a member of the protected class, and (4) was either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of her age. *Phillips v. Leggett*

*& Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

Again, the parties dispute the last prong of the prima facie analysis. Plaintiff argues that Jones replaced her, while Defendant posits that Plaintiff was not replaced at all. Defendant also argues that Plaintiff was not treated less favorably than Jones. Conversely, Plaintiff's theory is that although Jones is the least experienced, Plaintiff was the one chosen for termination, because Jones is younger. Plaintiff argues that there was a preexisting policy that employees who were hired earlier were given more seniority, and that seniority determined the order for necessary terminations. Plaintiff was hired two years before Jones, and according to Plaintiff, Jones was not as good at her job as she was, so she should have been terminated. However, deposition testimony directly refutes this argument. Former City Clerk Bobby Sanderson, who served for ten years prior to Futral, testified that he was not aware of any custom or practice that required layoffs based on the level of seniority. Otherwise, Plaintiff repeats her race based arguments and applies them to the ADEA claim.

Even if Plaintiff could establish a prima facie case in her age discrimination claim, she has failed to come forward with evidence that age was the "but-for" cause for her termination. Fellow Deputy Clerk Barbara Buggs, age 51, is a member of Plaintiff's protected age class, and yet her employment was unaffected. Indeed, three other City employees were terminated at the same time as Plaintiff, and all were younger than Plaintiff. Next, Plaintiff's deposition testimony does not support her assertion. When Defense Counsel asked Plaintiff whether there was anything to support her age-based claim, Plaintiff answered, "Well I feel like it played a role in the decision because I was hired before she did, and I knew more—how to do more of the jobs in the office than she did." Defense counsel responded, "Anything else?" Plaintiff replied "no."

The most harmful piece of evidence regarding Plaintiff's age is that during her later interview, she was asked, "how long do you plan on working" by an Alderman. While this remark may be related to Plaintiff's age, it does not, alone, show discriminatory animus, and it was posed well after Plaintiff's termination. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 475-76 (5th Cir. 2015) ("To be relevant evidence considered as part of a broader circumstantial case, 'the comments must show: (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decisionmaker'") (quoting *Squyres v. Heico Companies, L.L.C.*, 782 F.3d 224, 235 (5th Cir. 2015)). This comment, Plaintiff's only piece of evidence regarding her ADEA claim, constitutes a "stray remark," and is not relevant to her termination at all. *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 577 (5th Cir. 2003) ("After *Reeves,* however, so long as remarks are not the only evidence of pretext, they are probative of discriminatory intent").

All of this amounts to little more than Plaintiff's subjective belief that she was fired because of her age. Self-serving and speculative testimony regarding subjective beliefs that a termination resulting from age discrimination is insufficient to make an issue for the jury in the face of proof showing an adequate, nondiscriminatory reason for Plaintiff's release. *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 564 (5th Cir. 1983); *Houser v. Sears, Roebuck & Co.*, 627 F.2d 756 (5th Cir. 1980). Plaintiff's indirect evidence does not rebut Defendant's legitimate reasons for the termination or prove but-for causation. *See Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir. 1993); *Sherrod v. Sears, Roebuck & Co.*, 785 F.2d 1312, 1315–16 (5th Cir. 1986); *Neely v. Delta Brick & Tile Co., Inc.*, 817 F.2d 1224 (5th Cir. 1987). Accordingly, Plaintiff's age based discrimination claim must be dismissed.

*C. Retaliation*

A plaintiff establishes a prima facie case of retaliation by showing (1) that she engaged in activity protected by Title VII or the ADEA; (2) that an adverse employment action occurred; and (3) that there was a causal connection between the participation in the protected activity and the adverse employment decision. *Kwong v. Am. Flood Research, Inc.*, 132 F. App'x 18, 20 (5th Cir. 2005) (citing *Shirley v. Chrysler First, Inc.*, 970 F.2d 39, 42 (5th Cir. 1992). Plaintiff has clearly met the first two elements of her prima facie case, as she filed a claim for discrimination with the EEOC and was not hired as City Clerk. However, she has not presented evidence that her protected activity actually caused the adverse action.

Plaintiff argues that she was denied the opportunity to interview for the City Clerk position four times, because Defendants "waited until it had someone who, at least on paper, had more education and experience than Harville before interviewing for the position." This accusation does not encompass a viable retaliation claim, as it merely disputes the reasonableness of Defendants' employment decision. "Employment discrimination laws are 'not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers.'" *McDaniel v. Nat'l R.R. Passenger Corp.*, 705 F. App'x 240, 246 (5th Cir. 2017) (citing *Bryant v. Compass Grp. USA Inc*., 413 F.3d 471, 478 (5th Cir. 2005).

Further, even if Plaintiff could show a prima facie case of discrimination, she has not shown that Defendant's legitimate, nondiscriminatory reason for choosing Sanford was merely pretext. "A showing that the unsuccessful employee was '"clearly better qualified" (as opposed to merely better or as qualified) than the employees who are selected' will be sufficient to prove that the employer's proffered reasons are pretextual." *Moss v. BMC Software, Inc*., 610 F.3d 917, 922 (5th Cir. 2010). Plaintiff has not even attempted to show that she was better qualified for the position.

Instead, Plaintiff argues that she could think of no reason she was not hired, other than her race, age, and the fact that she had filed a lawsuit against the City. Plaintiffs must generally present evidence from which a jury could conclude that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Moss*, 610 F.3d at 923 (5th Cir. 2010).

Unlike Plaintiff, Sanford has a Bachelor of Science degree in accounting, has over thirty years experience in accounting, and was employed by the City of Carthage previously. Therefore, as Plaintiff has not shown that she was "clearly better qualified," she cannot show that retaliation was the but-for cause for the Defendants' decision to choose Sanford over her. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 608 (5th Cir. 2005) (holding that district court's failure to apply "but-for" causation standard to retaliation claim constituted plain error); *see also Pineda*, 360 F.3d at 487 (citing *Medina*, *v. Ramsey Steel Company Inc.*, 238 F.3d 674, 685 (5th Cir. 2001). Therefore, Plaintiff's retaliation claim must fail.

*Conclusion*

Plaintiff has failed to produce evidence to overcome the Defendant's legitimate, nondiscriminatory reasons for terminating her position and then not hiring her as City Clerk. Therefore, Defendant's Motion for Summary Judgment [41] is GRANTED. Plaintiff's discrimination claims under Title VII and the ADEA are dismissed. Her retaliation claim is dismissed as well.

SO ORDERED this the 30th day of January 2018.

/s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE